No. 17-1277

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

ELON L. EBANKS

*Claimant-Appellant,*

v.

ROBERT MCDONALD, Secretary of Veterans Affairs,

*Respondent-Appellee.*

Appeal from the United States Court of Appeals
for Veterans Claims in Case No. 16-3212

## APPELLANT'S CORRECTED OPENING BRIEF

MARK R. LIPPMAN, ESQ.
THE VETERANS LAW GROUP
8070 La Jolla Shores Drive #437
La Jolla, CA 92037
(858) 456-5840

December 29, 2016

# CERTIFICATE OF INTEREST
## UNITED STATES COURT OF APPEALS FOR
## THE FEDERAL CIRCUIT
No. 17-1277

Elon L. Ebanks

Mark R. Lippman, attorney of record for appellant, certifies the following:

1.    The full name of every party or amicus represented by me.

      Elon L. Ebanks

2.    The full name of real party in interest.

      Elon L. Ebanks

3.    The parent companies, subsidiaries, and affiliates that have issued to the public, or the party or amicus represented by me are:

      Elon L. Ebanks

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency are expected to appear in        this    Court are:

      Not Applicable
      Mark R. Lippman, Esq.

Dated:  December 29, 2016

                              /s/Mark R. Lippman
                                Mark R. Lippman

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                               ii-v

STATEMENT OF RELATED CASES                                          1

STATEMENT OF JURISDICTION AND APPEALABILITY                         2

STATEMENT OF ISSUES PRESENTED                                       3

RELEVANT STATEMENT OF THE CASE AND OF THE FACTS                    3-5

STATEMENT OF ARGUMENT                                              6-7

JURISDICTIONAL BASIS TO REVIEW MANDAMUS PETITIONS
AND MR. EBANK'S RIGHT TO OBTAIN MANDAMUS RELIEF
                                                                  7-8

JURISDICTIONAL BASIS UNDER 38 U.S.C. § 7292(a), (c), (d)(1)
AND STANDARD OF REVIEW
                                                                  8-9

ARGUMENTS

    THE VETERANS COURT APPLIED A FLAWED AND
    INCOMPLETE STANDARD FOR EVALUATING MR.
    EBANKS'S PETITION ALLEGING THE
    UNREASONABLENESS OF THE SECRETARY'S
    DELAYED IN SCHEDULING A BOARD HEARING
                                                                  10-28

    THE VA'S UNREASONABLE DELAY IN SCHEDULING
    MR. EBANKS'S REQUESTED HEARING VIOLATES HIS
    DUE PROCESS RIGHTS
                                                                  28-30

CONCLUSION                                                         30

CERTIFICATE OF COMPLIANCE                                          31

PROOF OF SERVICE                                                   32

i

# TABLE OF AUTHORITIES

| **Cases** | **Page** |
|---|---|
| *Arneson v. Shinseki*, 24 Vet.App. 379 (2011) | 8, 14 |
| *Bayliss v. Madden*, 204 F.Supp.2d 1285 (D.Or. 2001) | 28 |
| *Beasley v. Shinseki*, 709 F.3d 1154 (Fed.Cir. 2013) | 9, 23, 24, 25, 26 |
| *Bryant v. Shinseki*, 23 Vet.App. 488 (2010) | 14, 15 |
| *Bullock v. Brown*, 7 Vet.App. 69 (1994) | 5 |
| *Canadian Imperial Bank of Commerce v. Wells Fargo Bank*, 811 F.2d 1490 (Fed.Cir. 1987) | 26 |
| *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) | 11, 18 |
| *Corson v. Nicholson*, (unpub. opn.) (Vet.Ct. No. 07-0754) (filed on July 3, 2007); | 18 |
| *Costanza v. West*, 12 Vet. App. 133 (1999) | 17 |
| *Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998) | |
| *Dabone v. Thornburgh*, 734 F. Supp. 195 (D.E.Penn. 1990) | 18 |
| *Erspamer v. Derwinski*, 1 Vet.App. 3 (1990) | 13, 16, 22 |
| *Fusari v. Steinberg*, 419 U.S. 379 (1975) | 29 |
| *Hayburn's Case*, 2 U.S. 409 (1792) | 17 |
| *Heckler v. Day*, 467 U.S. 104 (1984) | 28 |
| *Henderson v. Shinseki*, 562 U.S. 428 (2011) | 12 |
| *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998) | 13 |
| *In re Brooklyn*, 736 A.2d 204 (Sup.Ct. Del. 1999) | 27 |
| *Kashkool v. Chertoff*, 553 F. Supp.2d 1131 (D.Ariz. 2008) | 18 |
| *Kirby v. McDonald*, (unpub. opn.) (Vet.Ct. No. 16-3417) (filed on November 7, 2016) | 18 |
| *Lamb v. Principi*, 284 F.3d 1378 (Fed. Cir. 2002) | 7, 8 |
| *Marcus v. Sullivan*, 926 F.2d 604 (7th Cir. 1991) | 16 |
| *Mathews v. Eldridge*, 424 U.S. 319 (1975) | 29 |
| *Mathis v. Shinseki*, (unpub. opn.) (Vet.Ct. No. 09-4515) (filed on July 26, 2010); | 18 |
| *Potomac Electric Power Co. v. ICC*, 702 F.2d 1026 (D.C. Cir. 1983) | 12 |
| *Public Citizen Health Research Group v. Commissioner, Food & Drug Administration*, 740 F.2d 21 (D.C. Cir. 1984) | 11 |
| *Ramsey v. Nicholson*, 20 Vet.App. 16 (2006) | 14 |
| *Schweiker v. Chiliky*, 487 U.S. 412 (1998) | 17 |
| *Shaw v. Nicholson*, (unpub. opn.) (Vet.Ct. No. 07-0004) (filed February 15, 2007) | 17 |
| *Telecommunications Research & Action Center ("TRAC") v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) | 11 |

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867
   (1st Cir. 1995)     19
*United States v. Majia*, 69 F.3d 309 (9th Cir. 1995)     15
*Vietnam Veterans of American et al. v. Shinseki*, 599 F.3d 654
   (D.C. Cir. 2010)     29
*White v. Mathews*, 434 F.Supp. 1252 (D.Conn. 1976)     27
*Yue Yu v. Brown*, 36 F. Supp. 2d 922 (D.N.M. 1999)     *13*

### Statutes & Regulations

28 U.S.C. § 1651(b)     2
38 U.S.C. § 7107     13, 14
38 U.S.C. § 7107(b)     6, 8
38 U.S.C. § 7252     2
38 U.S.C. § 7261(a)(2)     9, 10
38 U.S.C. § 7292     2, 8, 9

38 C.F.R. § 3.103(c)(2)     15
38 C.F.R. § 20.700(a)     8, 20
38 C.F.R. § 20.700(e)     21

### Other     Page

Board of Veterans' Appeals, *Report of the Chairman*
   (Fiscal Year 2010)     21, 22
Board of Veterans Appeals Process. http://legalmeetspractical.com
   /wp-content/uploads/2012/05/AppealingtoBVA.pdf
   (website last viewed on December 5, 2016)     19
Considering a BVA Hearing? http://www.bva.va.gov/docs/BVA-
   VideoHearing-508version.pdf (website last viewed December 5,
   2016)     4, 20
Hearings before Committee of Veterans Affairs, U.S. Senate,
   *Battling the Backlog: Challenges Facing the VA Claims
   Adjudication and Appeal Process*, 109th Congress, First Sess.,
   (May 26, 2005) (statement of Committee Chairman
   Senator Craig).     23
Mailing Addresses for Disability Compensation Claims
    http://www.benefits.va.gov/compensation/mailingaddresses.asp
    (website last viewed December 5, 2016)     4

Mark Lancaster, UCLA Luskin School of Public Affairs, Fixing
    the Appeals Process at the Department of Veterans Affairs
    (May 5, 2015), available at: luskin.ucla.edu/sites/default
    /files/14-VeteransAffairs_1.pdf.     20, 30

Ms. Laura Eskenazi. https://veterans.house.gov/witness-testimony
    /ms-laura-eskenazi (website last viewed on December 5, 2016)     20, 21

Updating and expanding the Board's video capability will reduce
    the time Veterans currently wait for their hearing, and will allow
    VLJs to recapture travel days as decision-generating workdays.
    available at: http://www.bva.va.gov/docs/Chairmans_Annual_
    Rpts/BVA2010AR.pdf (website last viewed on December 5,
    2016).     22

VA claims backlog now under 100,000 – lowest in department history
    http://www.blogs.va.gov/VAntage/22436/va-claims-backlog-now-
    under-100000-lowest-in-department-history/ (website last
    viewed on December 5, 2016)     21

VA M-21 Manual, Chap., Sec. H(4)(a), "Board of Veterans' Appeals
    Travel Board & Video Hearings," *Acknowledging a BVA Traveling
    Board Hearing* available at: https://www.google.it/search?q=time+
    estimates+for+BVA+hearings&ie=utf-8&oe=utf-8&gws_rd=
    cr&ei=jHNFWMmZC5a8jwOgoZiwBw (website last viewed
    on December 5, 2016)     12

VA M-21 Manual, Part I, Chap. 4, No. 2(c) "General Conduct for
    Hearings," *Obligation to Assist in Developing Facts*; *id.* Chap. 4,
    No. 5(a) "Additional Issues Raised during Hearing."     15

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellant, Elon L. Ebanks (hereafter "Mr. Ebanks"), hereby states that there is no known related case.


Dated:      December 23, 2016

/s/Mark R. Lippman
Mark R. Lippman

## STATEMENT OF JURISDICTION & APPEALABILITY

Pursuant to Rule 47.6, counsel for appellant, Mr. Ebanks states the following:

(a)    The statutory basis for jurisdiction of the Court of Appeals for Veterans Claims is 38 U.S.C. § 7252 and 28 U.S.C. § 1651(b).

(b)    The statutory basis for jurisdiction of the Court of Appeals for the Federal Circuit to hear this appeal is 38 U.S.C. § 7292 and 28 U.S.C. § 1651(b).

(c)    This appeal is timely because the Notice of Appeal ("NOA") from the judgment of the Court of Appeals for Veterans Claims ("the CAVC," "the Veterans Court" or "the lower court") was filed with the Clerk of the Veterans Court on November 16, 2016, within 30 days of the judgment entered on November 3, 2016, as required by Rules 3 and 4 of the Federal Rules of Appellate Procedure and § 7292.   Appx8-9.

(d)    The Veterans Court's order of October 12, 2016 is appealable under 38 U.S.C. § 7292(a).

**STATEMENT OF ISSUES PRESENTED**

I)    DID THE VETERANS COURT APPLY A FLAWED AND INCOMPLETE STANDARD FOR EVALUATING MR. EBANKS'S MANDAMUS PETITION, ALLEGING THE UNREASONABLENESS OF THE SECRETARY'S DELAY IN SCHEDULING A BOARD VIDEOCONFERENCE HEARING?

II)    ARE MR. EBANKS'S DUE PROCESS RIGHTS VIOLATED BY THE VA'S UNREASONABLE AND CONTINUING DELAY IN SCHEDULING A BOARD VIDEOCONFERENCE HEARING?

**STATEMENT OF THE CASE AND THE FACTS**

On October 24, 2014, the regional office issued a rating decision, denying, among other things, an increased rating for service-connected post-traumatic stress disorder (PTSD) in excess of fifty (50) percent and entitlement to a total disability rating based upon individual unemployability.  Appx10-13.  On November 28, 2014, the regional office issued a Statement of the Case.  Appx14-31.

On December 3, 2014, Mr. Ebanks, now represented by counsel, mailed and faxed to the Janesville Evidence Intake Center[1] (as part of the Form 9 Appeal) a request for the scheduling of a BVA videoconference hearing.[2]  Appx32-33.  Mr. Ebanks did not receive a response to the request.

On August 7, 2015, the undersigned's office mailed and faxed a to the Janesville Evidence Intake Center a second request for the scheduling of a videoconference hearing.  Appx34. Mr. Ebanks did not receive a response to the request.

On February 25, 2016, Mr. Ebanks again mailed and faxed to the Janesville Evidence Intake Center a request for the scheduling of a videoconference hearing.  Appx35.   In a May 9, 2016 correspondence, the regional office responded to Mr. Ebanks's videoconference hearing request, stating:

> Many individuals request such hearings, which BVA provides on a "first come, first served" basis. Videoconference BVA hearings are also limited by the availability of BVA personnel and resources. *We cannot estimate how long you may have to wait*

---

[1] The Evidence Intake Center is the VA's newly centralized mailing center. *See* http://www.benefits.va.gov/compensation/mailingaddresses.asp (website last viewed December 5, 2016).

[2] Appx44, available at:  http://www.bva.va.gov/docs/BVA-VideoHearing-508version.pdf (describing the procedure and advantages of a videoconference hearing) (website last viewed December 5, 2016).

4

> *before BVA can conduct your hearing.* We will
> notify you of the time and place of your
> videoconference BVA hearing when a date
> becomes available.

Appx36 (italics added).

The correspondence pointed out that Mr. Ebanks had the "option" of withdrawing his hearing request "which can result in a quicker decision by BVA." Appx37.

By mandamus petition, Mr. Ebanks sought an order compelling the VA's scheduling of a videoconference hearing. On October 12, 2016, the Veterans Court denied the petition, citing the VA's "'limited resources'" and noting that "'[t]he mere passage of time in reviewing a matter does not constitute' unreasonable delay,'" quoting *Bullock v. Brown*, 7 Vet.App. 69 (1994). Appx2.

In so ruling, the Veterans Court reprised the advisement given in the VA's May 2016 correspondence:

> VA informed Mr. Ebanks that Board hearings are
> optional and that he has the option to withdraw his
> request for a hearing, which "can result in a
> quicker decision by [the Board]."

Appx2.

## SUMMARY OF ARGUMENT

Congress gave veteran claimants an absolute right to a hearing before "[t]he Board shall decide any appeal." 38 U.S.C. § 7107(b) (2016). Congress did so for a good reason -- a Board hearing is a fundamental part of the development and fact-finding process. By affording a non-adversarial hearing, the Board can make important credibility determinations of the claimant and other witnesses based upon personal observation. In addition, the hearing officer provides important and specific advisements to the claimant to ensure proper development of the record.

In this case, the VA took twenty-one (21) months to reply to Mr. Ebanks's repeated requests for a Board videoconference hearing. In its boilerplate response, the VA advised Mr. Ebanks that he was one of several claimants requesting a Board hearing and that the wait time for his hearing could not be estimated. As an "option," the VA suggested that he might withdraw his hearing request to obtain a "quicker decision." Appx36-37.

In denying Mr. Ebanks's mandamus petition seeking the scheduling of his hearing, the Veterans Court applied its standard minimalist analysis, noting that the "mere passage of time" did not justify relief given the VA's "limited resources." Appx1-2.

Mr. Ebanks maintains that the lower court's superficial and

undersized test for reviewing his petition was patently inadequate.   Mr.

Ebanks asks the Federal Circuit to vacate the dismissal order and remand the

matter with instructions for the Veterans Court to apply the rule-of-reason in

evaluating mandamus petitions seeking relief from the Agency's

unreasonable delay in performing mandatory procedures.


## JURISDICTIONAL BASIS TO REVIEW MANDAMUS PETITIONS AND MR. EBANK'S RIGHT TO OBTAIN MANDAMUS RELIEF

In *Lamb v. Principi*, 284 F.3d 1378 (Fed. Cir. 2002), the

Federal Circuit squarely held that it had jurisdiction to review the Veterans

Court's rulings on mandamus petitions:

> Excluding the review of factual issues from our
> jurisdiction was intended to remove from our
> consideration the factual details of veterans
> benefits cases, such as whether the veteran's
> disability is service connected, when it began, and
> the extent of the disability. Congress intended the
> Veterans Court to be the final arbiter of those
> factual issues. There is no indication, however, that
> in thus limiting our jurisdiction, Congress intended
> to insulate from judicial review that court's ruling
> on mandamus petitions. Indeed, we regularly have
> reviewed Veterans Court rulings on those petitions
> without any indication or even suggestion that
> there was any question about our jurisdiction to do
> so. See, e.g., In re Wick, 40 F.3d 367 (Fed. Cir.
> 1994); Cox v. West, 149 F.3d 1360 (Fed. Cir.
> 1998). Although such assumption of jurisdiction
> without discussion was not precedential as to the
> jurisdictional issue, it does indicate that neither this

> court nor the government apparently had any
> serious question about our jurisdiction.

*Id.* at 1381-82.

Jurisdiction apart, "[t]o obtain mandamus, the petitioner must show (1) that he has a 'clear and indisputable right' to the writ and (2) that he has no alternative way to obtain the relief sought." *Lamb*, 284 F.3d at 1382 (citations omitted).

Mr. Ebanks has an absolute and fundamental right to a Board hearing.  38 U.S.C. § 7107(b);[3] 20 C.F.R. § 20.700(a).[4]  That is to say, Mr. Ebanks has a "*right* to be . . . heard by those assigned to adjudicate his appeal."  *Arneson v. Shinseki*, 24 Vet.App. 379, 388 (2011) (italics in original).  Moreover, he has no other alternative to mandamus to obtain the relief sought.

## JURISDICTIONAL BASIS UNDER 38 U.S.C. § 7292(a), (c), (d)(1) AND STANDARD OF REVIEW

Title 38, section 7292(a) of the Federal Code of Statutes provides, in relevant part:

---

[3] Section 7107(b) provides: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing."

[4] Section 20.700(a) reads: "Right to a hearing. A hearing on appeal will be granted if an appellant, or an appellant's representative acting on his or her behalf, expresses a desire to appear in person."

> After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of a decision of the Court on a rule of law or of *any statute or regulation* . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.

38 U.S.C. § 7292(a) (2014) (italics added).

In the present case, Mr. Ebanks's appeal asks the Federal Circuit to decide the proper standard for determining when the "action of the Secretary" has been "unreasonably delayed" under 38 U.S.C. § 7261(a)(2) and the All Writs Act.  *Cox v. West,* 149 F.3d 1360, 1362-63 (Fed.Cir. 1998); *see also Beasley v. Shinseki*, 709 F.3d 1154, 1157-58 (Fed.Cir. 2013).

In addition, Mr. Ebanks challenges the same delay under due process principles.   The Federal Circuit therefore has the jurisdiction to entertain this constitutional claim and to review the underlying facts of the claim.  38 U.S.C. § 7292(a), (c), (d)(1); *In re Bailey*, 182 F.3d 860, 865-68 (Fed.Cir. 1999).[5]

---

[5] At the Veterans Court, Mr. Ebanks challenged the Secretary's delayed action under statutory and due process grounds.

9

**ARGUMENT**

**I**

**THE VETERANS COURT APPLIED A FLAWED AND INCOMPLETE STANDARD FOR EVALUATING MR. EBANKS'S PETITION ALLEGING THE UNREASONABLENESS OF THE SECRETARY'S DELAYED IN SCHEDULING A BOARD HEARING**

Mr. Ebanks contends that the VA's delayed and vacuous response to his repeated requests for a Board videoconference hearing and its continuing delay in scheduling a hearing constitute an unreasonable delay within the meaning of 38 U.S.C. § 7261(a)(2) and the All Writs Act. On this question, the Veterans Court applied a flawed and incomplete standard to review the mandamus petition.   Mr. Ebanks submits that the rule-of-reason should be the proper legal standard.

A)   The Rule-of-Reason

In a line of cases, the United States Court of Appeals for the District of Columbia formulated the so-called "rule-of-reason" to evaluate claims of unreasonable delay of agency action.   Among several factors, some overlapping, the Court of Appeals set forth the following for

consideration: (1) whether the length of the delay is excessive, (2) whether the primary purpose of the agency is to ensure a timely benefit mandated by Congress, (3) whether the requested procedure involves a substantial right, (4) whether an individual's health and basic living needs are at stake as opposed to less urgent economic interests, (5) whether granting the requested mandamus relief will adversely affect competing priorities for the agency's time and resources, (6) whether the delayed action involves complex and sensitive procedures or routine and ministerial acts, (7) whether the delayed action has been caused by agency inefficiency and lack of responsiveness, (8) whether the agency has made successful efforts to reduce the delay and (9) whether the agency owes a special duty to a protected class of individuals. *Telecommunications Research & Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70, 79-81 (D.C. Cir. 1984); *Public Citizen Health Research Group v. Commissioner, Food & Drug Administration*, 740 F.2d 21, 32-35 (D.C. Cir. 1984); *Cobell v. Norton*, 240 F.3d 1081, 1096-1109 (D.C. Cir. 2001); *see Cox v. W.*, 149 F.3d at 1364 (citing with approval the *TRAC* case).[6]

Here, the Secretary's delay of twenty-one (21) months to respond to Mr. Ebank's repeated requests for a hearing is excessive and

---

[6] These cases enumerate six factors, but others can be inferred from their analysis.

unreasonable.   But the Secretary's boilerplate response[7] deserves another adjective – *egregious* -- showing utter indifference to the pressing needs of veteran claimants and extraordinary ineptitude in the management of its cases.   The VA's unabashed ignorance of its hearing schedule is nothing short of an admission of incompetency.   In light of the Board's "first-come, first-served" scheduling procedure, the VA should know the estimated time frame for scheduling and holding hearings and should provide this information to claimants.   Appx36.   The VA owes at least that much to disabled veterans in a system designed to be "unusually protective of claimants."   *Henderson v. Shinseki*, 562 U.S. 428, 437 (2011) (citations and interior quotation marks omitted).

The VA's inability to even estimate the wait time for hearings causes uncertainty and frustration for claimants and a loss of public confidence in the VA system.   *Potomac Electric Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983); ("Excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty

---

[7] *See* VA M-21 Manual, Chap., Sec. H(4)(a), "Board of Veterans' Appeals Travel Board & Video Hearings," *Acknowledging a BVA Traveling Board Hearing* (giving sample text for notice of travel board hearings), available at:
https://www.google.it/search?q=time+estimates+for+BVA+hearings&ie=utf-8&oe=utf-8&gws_rd=cr&ei=jHNFWMmZC5a8jwOgoZiwBw (website last viewed on December 5, 2016)

for the parties, who must incorporate the potential effect of possible agency decision making into future plans."); *Erspamer v. Derwinski*, 1 Vet.App. 3, 10 (1990) (quoting *Potomac*); *Yue Yu v. Brown*, 36 F. Supp. 2d 922, 934-35 (D.N.M. 1999) (noting the hardship to the claimant caused by the INS's inexcusable failure to give claimant notice of the delay in processing his application); *see generally Hodge v. West*, 155 F.3d 1356, 1364 (Fed. Cir. 1998) ("in the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weigh").

This now two-year delay – what the Veterans Court below casually noted as "may be bothersome"[8] – cannot be reconciled with the VA's avowed mission to provide timely adjudication.  As explained in the legislative history of the July 1994 amendment to 38 U.S.C. § 7107, timely adjudication is a Congressional imperative:

> In July 1994, section 7107 was amended to add provisions relating to hearings, including new section 7107(b), which stated: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." Pub. L. 103-271, § 7, 108 Stat. 742 (July 1, 1994). The amendment repealed section 7110 and moved hearing provisions in existing sections 7102, 7104, and 7110 to amended section 7107, thereby combining the provisions governing the docketing

---

[8] Appx2.

> of appeals and the scheduling of hearings into one
> section. See 140 CONG. REC. H4350, H4352
> (daily ed. June 13, 1994) (Committees on
> Veterans' Affairs of the Senate and House of
> Representatives' Explanatory Statement of
> Compromise Agreement on S. 1904). In urging his
> colleagues in the Senate to support S. 1904, Mr.
> Rockefeller, Chairman of the Senate Committee on
> Veterans' Affairs noted that "[a] critical part of
> VA's mission is to make sure veterans and their
> families receive fair, efficient, and timely
> adjudication of their benefit claims. *Timeliness is
> simply vital*." 140 CONG. REC. S4757, 4758 (Apr.
> 21, 1994).

*Ramsey v. Nicholson*, 20 Vet.App. 16, 33 (2006) (italics added).

The right to timely adjudication extends to all stages and procedures of a claim, including the scheduling and holding of Board hearings.[9] Without question, a Board hearing is a fundamental part of the adjudication process. 38 U.S.C. § 7107(b). By affording a non-adversarial hearing, the Board, specifically the Veterans Law Judge (VLJ) deciding the case, can make important credibility determinations of the claimant and other witnesses based upon personal observation. *Arneson v. Shinseki*, 24 Vet.App. 379, 387-88 (2011). A hearing also provides the claimant with particularized notice of the relevant issues and of potentially outstanding relevant evidence existing or to be developed in the case. *Bryant v. Shinseki*,

---

[9] In some cases, a Board hearing may delay the issuance of its final decision. 38 U.S.C. § 7107(c). But the timely scheduling and holding of Board hearings are a separate matter.

23 Vet.App. 488, 496-97 (2010) (explaining a hearing officer's notice obligations under 38 C.F.R. § 3.103(c)(2)).    Further still, a non-adversarial hearing allows for an informal dialogue between the claimant, (his representative) and the VLJ on all issues.    *See generally* VA M-21 Manual, Part I, Chap. 4, No. 2(c) "General Conduct for Hearings," *Obligation to Assist in Developing Facts*; *id.* Chap. 4, No. 5(a) "Additional Issues Raised during Hearing."

On the other hand, without a hearing, the claimant is just a name and a docket number to a VLJ. And, a cold record can never capture all the subtle factors bearing on the credibility and persuasive value of competent lay evidence. *Compare United States v. Majia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility.  Only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.  Live testimony enables the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice - matters that cannot be gleaned from a written transcript.") (citations and interior quotation marks omitted).

Considering the importance of a hearing, the VA's proposed remedy for the delay is appalling.   In its standard notice, the Secretary suggests the withdrawal of the hearing request as an "option" to obtain a "quicker decision" – this, without even giving a time estimate for the "quicker decision." Appx36-37.[10] This Hobson's choice is no choice at all. A disabled veteran should not be asked to forfeit one basic right to obtain another – to receive timely adjudication, if that, only at the expense of foregoing a live hearing.

This aside, the VA's delay in scheduling a hearing necessarily delays receipt of sorely needed funds for a disabled veteran's basic living, a concern more urgent than other economic interests.  *Erspamer v. Derwinski*, 1 Vet.App. 3, 10 (1990) ("Claims for benefits due to military service clearly implicate human health and welfare concerns as distinguished from economic regulation."); *see also, Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991) ("The Secretary argues that claimants who are eventually successful in the administrative process can obtain full benefits, though only retroactively. A delayed receipt of disability benefits, however, cannot

---

[10] The Secretary also asks claimants to consider the option of traveling to Washington, DC for a Board hearing.  Appx36-37.  Of course, this option assumes disabled veterans have the funds to pay for travel expenses, as "the VA cannot pay any expenses . . . incur[red] in connection with attending a BVA hearing."  Appx37.  It also assumes the veteran's health and circumstances will permit long-distance travel.

suffice to make the claimant whole. Any delay potentially subjects claimants to deteriorating health, and even death. Claimants need to receive funds promptly because they use their benefits to purchase the very necessities of life." (citations omitted); *Schweiker v. Chiliky*, 487 U.S. 412, 428-29 (1998) ("We agree that suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the belated restoration of back benefits. The trauma to respondents, and thousands of others like them, must surely have gone beyond what anyone of normal sensibilities would wish to see imposed on innocent disabled citizens.") (interior quotations marks omitted); *see also Hayburn's Case*, 2 U.S. 409, 410 n.2 (1792) ("[M]any unfortunate and meritorious [veterans], whom Congress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one.").

Under the rule-of-reason, a reviewing court also considers the agency's competing priorities for its resources. In the opinion below, this factor appeared as a bald conclusion, typical for Veterans Court decisions.[11]

---

[11] *See e.g., Costanza v. Wes*t, 12 Vet. App. 133, 134 (1999) (per curiam order) ("He has not demonstrated that the delay he complains of is so extraordinary, given the demands and resources of the Secretary, that the delay amounts to an arbitrary refusal to act, and not the product of a burdened system.") *Shaw v. Nicholson*, (unpub. opn.) (Vet.Ct. No. 07-0004)

The Veterans Court assumed, without a showing or an allegation by the Secretary, that the VA's "limited resources" justified the delay, quoting *Bullock*. Appx2. But the rule-of-reason requires more than a general and unsupported assertion or finding. *Dabone v. Thornburgh*, 734 F. Supp. 195, 203 (D.E.Penn. 1990) ("delays of [a significant] magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork."); *Kashkool v. Chertoff*, 553 F. Supp.2d 1131, 1146 (D.Ariz. 2008) (insufficient to merely cite a large number of pending applications to justify lengthy delay).

And, even assuming a showing of limited resources, the VA must still demonstrate progress in alleviating persistent chronic delays. *Cobell v. Norton*, 240 F.3d 1081, 1097 (D.C. Cir. 2001) ("Yet neither a lack of sufficient funds nor administrative complexity, in and of themselves, justify extensive delay, nor can the government claim that it has become subject to unreasonable expectations. Federal officials were aware of their fiduciary obligations long before the passage of the 1994 Act-let alone the initiation of this action-and yet little progress has been made in discharging

(filed February 15, 2007); *Corson v. Nicholson*, (unpub. opn.) (Vet.Ct. No. 07-0754) (filed on July 3, 2007); *Mathis v. Shinseki*, (unpub. opn.) (Vet.Ct. No. 09-4515) (filed on July 26, 2010); *Kirby v. McDonald*, (unpub. opn.) (Vet.Ct. No. 16-3417) (filed on November 7, 2016).

those duties."); *cf. Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879-80 (1ˢᵗ Cir. 1995) ("An entity that chooses to indulge inefficiencies cannot expect to be granted special dispensations. If the mills of the bureaucrats grind slow, then the agency, having called the tune, must pay the piper.") (citations and interior quotation marks omitted).

On this score, the VA has not delivered on its promises.   In 2009, the BVA published statistics on the wait time for the different stages of an appeal.  The Board reported an average wait time of 678 days from the filing of a substantive appeal (when a claimant first requests a BVA hearing) to the time of the videoconference hearing.   Appx39, available at: http://legalmeetspractical.com/wp-content/uploads/2012/05/AppealingtoBVA.pdf  (website  last  viewed  on December 5, 2016).

Since then, the wait time has only increased, despite VA assurances of improved efficiency and reduced backlog of cases.   For example, the VA has promoted its state-of-the-art technology for videoconferencing as an important time-saving measure.  Before the House Committee on Veterans Affairs' in 2013, Laura Eskenazi, then-Principal Deputy Vice Chairman of the Board of Veterans' Appeals, testified that "[l]essons learned from the Appeals Design Team and increased use of video

conferencing technology for Board hearings will add valuable efficiencies into the system and result in positive change for Veterans." Appx43, available at: https://veterans.house.gov/witness-testimony/ms-laura-eskenazi (website last viewed on December 5, 2016)[12] *see* Appx46, available at:

---

[12] Ms. Eskenazi added: "[T]o achieve the maximum benefit from VA's significant investment in state-of-the art video conferencing technology, full Congressional support of § 202 of the Veterans Claims Improvement Act of 2013 [which did not pass] is needed." However, Ms. Eskenazi did not specify what more was needed "to achieve maximum benefit from the VA's significant investment in state-of-the-art video conferencing technology." After all, videoconferencing technology is offered at over sixty-five (65) locations across the country. Appx44, available at: http://www.bva.va.gov/docs/BVA-VideoHearing-508version.pdf (website last viewed on December 5, 2016).

One scholar suggests eliminating Travel Board hearings and face-to-face hearings held in Washington by making Board videoconference hearings mandatory. The author estimated that this reform would shorten the process by 285 days. Mark Lancaster, UCLA Luskin School of Public Affairs, *Fixing the Appeals Process at the Department of Veterans Affairs* (May 5, 2015) at 35, available at: luskin.ucla.edu/sites/default/files/14-VeteransAffairs_1.pdf.

The VA could easily implement this reform by amending 38 C.F.R. § 20.700(a) and (e). Subsection 20.700(a) provides:

> Right to a hearing. A hearing on appeal will be granted if an appellant, or an appellant's representative acting on his or her behalf, expresses a desire *to appear in person*."

§ 20.700(a) (italics added). The italicized language should be replaced by the phrase *for a hearing*. This proposed amendment would remove the right to a face-to-face hearing.

*https://veterans.house.gov/witness-testimony/ms-laura-eskenazi-executive-in-charge-and-vice-chairman-board-of-veterans-appeals* (Ms. Eskenazi, as Vice Chairman Board of Veterans' Appeal, testifying in 2014 that the BVA's twenty-nine (29) percent increase in its staff and its training programs are expected to increase production of BVA decisions by thirty (30) percent); *see also* Appx47-49, available at: http://www.blogs.va.gov/VAntage/22436/va-claims-backlog-now-under-100000-lowest-in-department-history/ (website last viewed on December 5, 2016) (statement of Under Secretary for the Veterans Benefits Administration, proclaiming the drastic reduction in backlog of cases); Board of Veterans' Appeals, *Report of the Chairman*, at 8 (Fiscal Year

---

Subsection 20.700(e) currently reads:

Electronic hearings. When suitable facilities and equipment are available, an appellant *may* be scheduled for an electronic hearing. Any such hearing will be in lieu of a hearing held by personally appearing before a Member or panel of Members of the Board and shall be conducted in the same manner as, and considered the equivalent of, such a hearing. If an appellant declines to participate in an electronic hearing, the appellant's opportunity to participate in a hearing before the Board shall not be affected.

§ 20.700(e) (2016) (italics added). The first sentence could be rewritten to read: "When suitable facilities and equipment are available, an appellant [*shall*] be scheduled for an electronic hearing." The rest of the text of § 20.700(e) should be removed.

2010) ("The Board is also working with VBA and VHA to allow video hearings to be held from more locations in the field (beyond ROs), which will be more convenient for Veterans and make the video option more appealing. Initially, BVA will use the expanded video capability to reduce the backlog of hearings. *Updating and expanding the Board's video capability will reduce the time Veterans currently wait for their hearing*, and will allow VLJs to recapture travel days as decision-generating workdays.") (italics added), available at: http://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2010AR.pdf (website last viewed on December 5, 2016).

At some point, the VA's excuses of limited resources, claims of reduced backlog of cases and pledges of improved efficiency lose credibility. "The delays have benefited neither the parties nor the public and they cannot be permitted to continue." *Erspamer*, 1 Vet.App. at 11. Over eleven years ago, at a hearing before the Committee on Veterans Affairs, Senator Craig sounded this all-too familiar theme:

> Many attempts have been made over the past decade to fix the delays in the claims processing system. More money for staffing has been provided; different management techniques . . . under both Democratic and Republican Administrations have been employed.

> I am looking at the numbers here. During the
> Bush years, we have increased funding by about
> 40 percent, 44 percent in this area. This year's
> budget is awfully close to the independent budget,
> at about 28 percent increase. And yet, the lines
> seem to keep building.

Hearings before Committee of Veterans Affairs, U.S. Senate, *Battling the Backlog: Challenges Facing the VA Claims Adjudication and Appeal Process*, 109th Congress, First Sess., at 15 (May 26, 2005) (statement of Committee Chairman Senator Craig).

B)     The Dicta in *Beasley v. Shinseki*

Mr. Ebanks maintains that much of the broad language in *Beasley v. Shinseki*, 709 F.3d 1154 (Fed.Cir. 2013) does not apply to the facts of his case.

In *Beasley v. Shinseki*, 709 F.3d 1154 (Fed.Cir. 2013), the petitioner/claimant requested his treating VA physician to prepare a medical evaluation in support of his disability claim based upon newly obtained evidence. In response, petitioner received a letter from a VA attorney, explaining that the VA physician was instructed to decline petitioner's request based upon conflict-of-interest concerns. Petitioner then filed a mandamus petition before the Veterans Court, seeking an order compelling

the VA treating physician to provide the medical evaluation. The court

denied the petition.

The Federal Circuit affirmed, holding that the VA's duty to

assist did confer upon petitioner an indisputable right to a medical evaluation

performed by his treating VA physician:

> Mr. Beasley did not establish that he was entitled
> to a writ of  mandamus as a matter of law. First,
> he failed to show that he had a clear right to the
> relief he was seeking. His petition requested an
> order compelling the Secretary to direct Mr.
> Beasley's DVA treating physician to conduct a
> retrospective medical examination. But neither
> section 5103A(a)(1) nor section 5103A(d)(1)
> imposes an open-ended obligation on the DVA to
> provide a medical examination or opinion upon
> demand; section 5103A(d)(1) states that the duty
> to assist requires the DVA to provide a medical
> examination "when such an examination . . . is
> necessary to make a decision on the claim." The
> Board's June 2010 remand order required the
> regional office to "consider" providing a clinical
> evaluation, a retrospective medical evaluation, or
> both. The DVA conducted a medical examination
> pursuant to both its statutory duty and the remand
> order; *it is not indisputably clear that Mr.
> Beasley's new lay evidence entitles him to a second
> medical examination as a matter of law*.

*Id.* at 1158-59 (italics added).

The *Beasley* court then considered the hypothetical question of

whether petitioner's mandamus request would have any greater success if it

were limited to expedited consideration of the newly obtained evidence:

> [E]ven treating Mr. Beasley's legal claim as limited to requesting that the regional office or the Board consider his newly submitted lay evidence, mandamus is still inappropriate. After filing the petition at issue here, Mr. Beasley received an earlier effective date for service connection for his PTSD, and the Board remanded the issue of his TDIU rating for further consideration. Those events reflect the manner in which claims are typically processed and reevaluated when a veteran brings new evidence to light on appeal.

*Id.* at 1159 (citation omitted).

In even broader dicta, *Beasley* described the potential widespread abuse of mandamus petitions without a showing of individual disparity, *i.e.*, a disparity between the length of delay in the petitioner's case and that in the mine run of cases:

> Mr. Beasley may be frustrated by the lengthy history of his case, but he has not shown that he has been *uniquely burdened* by the duration of the appeals process, and he points to no other special circumstances that would justify issuance of the writ in his case. He argues that the DVA is acting unlawfully by denying him his requested retrospective examination, but that allegation does not distinguish his position from that of any other veteran who claims that the DVA failed to assist him. Those contentions are properly addressed to the Board on appeal.
>
> Granting Mr. Beasley's mandamus petition, although it would advance his case, would necessarily displace other cases that are awaiting adjudication, and it would thereby delay the disposition of the claims of other veterans who

> have followed the prescribed procedures of the veterans' benefits system. If adopted more broadly, Mr. Beasley's argument could lead to the widespread use of the writ of mandamus as a substitute for the ordinary appeals process mandated by Congress, at least in cases in which the veteran claims that the DVA breached its duty to assist. That is not a result that would be beneficial to the system as a whole, and it is certainly not one contemplated by Congress.

*Id.* (italics added).

To the extent this sweeping dicta argues for a required showing of individual disparity in all mandamus petitions, it should not be followed in this case. *Canadian Imperial Bank of Commerce v. Wells Fargo Bank*, 811 F.2d 1490, 1494 (Fed.Cir. 1987) ("The statements in an opinion, however, must be read in light of the issue before the court, and broad language cannot be applied uncritically to wholly different factual situations.") (citation omitted).

Where, as here, there has been an institutional failure in the agency's timely performance of a specific duty, a showing of individual disparity is neither possible nor relevant.[13] For purposes of this mandamus proceeding, Mr. Ebanks assumes that many other claimants share his

---

[13] To be clear, under the rule-of-reason, the average length of a delay is usually a helpful yardstick for evaluating the excessiveness of a challenged delay. But such averages have little, if any, value in claims asserting an overall breakdown in the system.

predicament. But excessive and indefinite delays are no less unreasonable and intolerable as a systemic and collective problem than they are as single, isolated incidents.    *Compare In re Brooklyn*, 736 A.2d 204, 207 (Sup.Ct. Del. 1999) ("The framers of the Delaware Constitution vested this Court with the original jurisdiction to issue writs of mandamus to the Superior Court, as a means of redress for litigants, when there is an institutional failure to respond or act within a reasonable amount of time. The record of the New Castle County Prothonotary's inaction in this case reflects such a systematic failure by an officer of the Superior Court.  Brookins is entitled to redress for the Superior Court's institutional failure to exercise its authority by considering Brookins'' motions in a timely manner when it had a duty to do so.  Since there is no other adequate remedy, Brookins' petition for a writ of mandamus must be granted."); *White v. Mathews*, 434 F.Supp. 1252, 1261 (D.Conn. 1976), *aff'd* 559 F.2d 852 (2d. Cir. 1977) ("The Court finds that the lengthy and persistent delays experienced in the Title II disability appeals system in Connecticut averaging 211.8 days between January 1973 and March 1975 (moreover, the intervenor Alice Lockwood was required to wait 376 days for a decision) are unreasonable. Such delay denies due process rights to aggrieved applicants and conflicts with the statutory purposes and provisions of the Social Security and Administrative Procedure

Acts. These acts require that the Agency act with reasonable dispatch."); 559 F.2d at 858 ("The disability insurance program is designed to alleviate the immediate and often severe hardships that result from a wage-earner's disability. In that context, delays of the better part of a year in merely affording an evidentiary hearing detract seriously from the effectiveness of the program."); *Bayliss v. Madden*, 204 F.Supp.2d 1285, 1288-89 (D.Or. 2001); *see Heckler v. Day*, 467 U.S. 104, 119 n.33 (1984) (holding that courts may not impose upon an agency mandatory deadlines for adjudicating an entire class of cases when Congress has rejected imposing mandatory deadlines).

## II

## THE VA'S UNREASONABLE DELAY IN SCHEDULING MR. EBANKS'S REQUESTED HEARING VIOLATES HIS DUE PROCESS RIGHTS

Mr. Ebanks contends that the Secretary's delay in scheduling his requested BVA hearing – now two years long with no end in sight – violates his due process rights.

Since claims of unreasonable delay based upon due process principles have much in common with those based upon statutory grounds,

Mr. Ebanks relies upon many of the contentions set forth in the previous argument. *Vietnam Veterans of American et al. v. Shinseki*, 599 F.3d 654, 660 (D.C. Cir. 2010) ("a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim").

Under *Mathews v. Eldridge*, 424 U.S. 319 (1975), the High Court set forth three factors in evaluating claims of due process violations based upon an agency's alleged inadequate procedures:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Here, the delay in the scheduling of Mr. Ebanks's hearing necessarily prolongs the delay in the receipt of urgently needed funds for basic living. The Supreme Court has recognized that "the possible length of wrongful deprivation of . . . benefits is an important factor in assessing the impact of official action on . . . private interests." *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975).

Second, minimal resources would be needed for the VA to calculate the estimated wait time for a hearing and to inform claimants of the same.   In addition, the VA could substantially reduce the wait times by implementing time-saving measures. For instance, eliminating face-to-face hearings would shorten much of the delay.  *See* Mark Lancaster, UCLA Luskin School of Public Affairs, *Fixing the Appeals Process at the Department of Veterans Affairs* (May 5, 2015) at 35, available at: luskin.ucla.edu/sites/default/files/14-VeteransAffairs_1.pdf.

Finally, the third factor under *Mathews* balances the government's burden to provide additional administrative action against the risk of deprivation of a requested benefit.  Here, delay causes substantial hardship to petitioner's dire financial situation and outweighs the burden upon the VA to provide a timely hearing.

## CONCLUSION

For the stated reasons, Mr. Ebanks respectfully asks that the Veterans Court's order be vacated and the matter remanded consistent with the arguments set forth herein.

Respectfully submitted,

/s/Mark R. Lippman
Mark R. Lippman

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies under Federal Rules of Appellate Procedure Rule 32(a)(7) that this brief is written 14-point type face and contains 6219 words.


Dated:   December 29, 2016

Respectfully submitted,

/s/Mark R. Lippman
    Mark R. Lippman

## PROOF OF SERVICE

I hereby certify under penalty of perjury that on the 29th day of December, 2016, a copy of the foregoing:

## APPELLANT'S OPENING BRIEF

was filed electronically.  This filing was served electronically to all parties by operation of the Court's electronic filing system.

U.S. Court of Appeals for the Federal Circuit
Clerk of the Court
717 Madison Place, NW
Washington, DC 20439

/s/Mark R. Lippman
Mark R. Lippman, Esq.
8070 La Jolla Shores Drive, #437
La Jolla, CA 92037
(858) 456-5840

*Designated for electronic publication only*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-3212

ELON L. EBANKS, PETITIONER,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before PIETSCH, *Judge*.

## O R D E R

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

On September 16, 2016, Mr. Ebanks filed through counsel a petition for extraordinary relief in the nature of a writ of mandamus. In support of his petition, Mr. Ebanks alleges the following chronology: on October 22, 2014, Mr. Ebanks's counsel mailed the Janesville Evidence Intake Center a copy of VA Form 21-22a, Power of Attorney; on November 28, 2014, VA issued a Statement of the Case in the petitioner's case and he alleges the case remains in appellant status; on December 3, 2014, August 7, 2015, and February 25, 2016, Mr. Ebanks's counsel mailed and faxed to the Janesville Evidence Intake Center a request for a Board videoconference hearing and received no response from VA; on May 12, 2016, counsel received from VA a letter acknowledging the request for a videoconference hearing before the Board. Petition (Pet.) at 1-4; Exhibits 1-7. The petitioner requests that the Court issue a writ to "compel the scheduling of a 2-way Board video hearing." Pet. at 1.

This Court has the authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Before the Court may issue a writ, three conditions must be satisfied: (1) the petitioner must demonstrate a lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that the issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

When delay is alleged as the basis for a petition for a writ of mandamus, a clear and indisputable right to the writ does not exist unless the petitioner demonstrates that the alleged delay is so extraordinary, given the demands on and resources of the Secretary, that it is the equivalent to

"an arbitrary refusal to act." *Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order). Although the time taken by VA to process a case may be bothersome, "[t]he delay involved . . . must be unreasonable before a court will inject itself into an administrative agency's adjudicative process" and "[t]he mere passage of time in reviewing a matter does not necessarily constitute" unreasonable delay. *Bullock v. Brown*, 7 Vet.App. 69, 69 (1994) (per curiam order).

Based on the facts in Mr. Eubanks's petition, the Court finds that the issuance of a writ is not warranted. Although there has been delay in this case, the petitioner's attached Exhibit 7–which is a copy of a May 9, 2016, letter from VA addressed to Mr. Ebanks–states that

> [b]ased upon your request for a videoconference hearing before a member of the Board . . . we have placed you on the list of persons wanting to appear at our office for a videoconference hearing before the [Board] . . . Many individuals request such hearings, which [the Board] provides on a "first come, first served" basis. We cannot estimate how long you may have to wait before [the Board] can conduct your hearing. We will notify you of the time and place of your Videoconference [Board] hearing when a date becomes available.

Exhibit 7, page 1. Regrettably, VA has "limited resources" to meet demands for its services and, therefore, this Court has held that "[t]he mere passage of time in reviewing a matter does not necessarily constitute" unreasonable delay. *Bullock*, 7 Vet.App. at 69. Here, it has allegedly been several months since VA took action on Mr. Ebanks appeal in the form of acknowledgement of his request for a videoconference hearing. Further, VA informed Mr. Ebanks that Board hearings are optional and that he has the option to withdraw his request for a hearing, which "can result in a quicker decision by [the Board]." Exhibit 7, page 2.

Consequently, Mr. Ebanks has not shown that VA has engaged in a delay that amounts to an arbitrary refusal to act. *See Costanza*, 12 Vet.App. at 134. Accordingly, the Court must deny his request for extraordinary relief.

Upon consideration of the foregoing, it is

ORDERED that the September 16, 2016, petition for extraordinary relief in the nature of a writ of mandamus is DENIED.

DATED: October 12, 2016                                   BY THE COURT:

CORAL WONG PIETSCH
Judge

2

Copies to:

Mark R. Lippman, Esq.

VA General Counsel (027)

3